taken under advisement is agenda number 13. Next case in the call today is agenda number 14, case number 105-971 and 105-984, May it please the court, Miriam Casper on behalf of the City of Chicago and this morning I will be sharing my time with Mr. Paul Castiglione who represents the County of Cook who will take about five minutes. You have divided your time. That's correct. When the Chicago City Council decided to take steps to foster production of live performances in what is commonly regarded as the fine arts, it found that small theaters and venues often produce innovative, creative, new live performances yet have the most difficulty passing on additional costs and may not be able to flourish without government support. The City Council determined that it would provide the needed support through an exemption to the City's amusement tax. As a result, patrons of live theatrical, musical, or other live cultural performances held in a venue with a capacity of less than 750 persons are exempt from the amusement tax. Puba is an adult entertainment cabaret. Like most other amusements in Chicago, such venues don't generally foster production of innovative, live fine arts performances or need the government's support in order to flourish. This morning I will explain why the small venue exemption does not violate the First Amendment. The United States Supreme Court has repeatedly held that when the government elects to subsidize speech, it can spend its money as it wishes, even if it makes content-based distinctions or takes content into consideration when it determines who will receive the subsidy. That is the holding of Regan, of Rust, and of Finley, to name a few cases that we rely on, and that principle was most recently reaffirmed in Davenport, which cites Regan for that exact proposition. When the government directly imposes regulations or tries to restrict speech, however, that's a different situation, because in that situation there's a risk that a content consideration will interfere with the marketplace of ideas. But when the government is not regulating speech, such as here, that concern is attenuated at best. That is why the court has upheld laws that permit only some non-profit groups to engage in lobbying with government funds, as in Regan, but not others, that require government funds only to be used to promote childbirth in a family planning counseling, and forbid discussion of abortion, or regulations that permit the government to consider whether grant application meets the requirements of the law. That's Finley. None of these laws was deemed impermissibly content-based, or subject to strict scrutiny, because there was no indication that the government was attempting to suppress any ideas, and the courts made clear that encouraging some speech does not suppress other speech, so there was just no First Amendment concern at all. The small venue exemption is not materially different from the laws at any of those cases, and presents no First Amendment concern either. The city offers a subsidy to small venues that produce live performances in what is generally considered fine arts to advance its policy. Amusements that do not fit the policy are not subsidized. They don't need the government's support to flourish, and they don't foster the government's policy. Adult entertainment cabarets, in fact, are recognized not as venues that encourage and present new and creative live theater and performances, but in fact spur negative secondary effects in the surrounding community, as this Court has recognized. And that just means that they don't foster the city's program, so the government doesn't provide them the support that small theaters receive. Do you think this is content-neutral? Your Honor, the way the cases break down content-neutral versus content-based, those are used more as terms of art. So to the extent that the city's policy is aimed to foster new and innovative fine arts performances rather than suppress any speech, which is how the Court describes content... But then I thought the case law pretty well established that content-neutral goals are not dispositive. Are not dispositive? I'm sorry, I didn't hear. It wouldn't matter what label to put on it at all, Your Honor. Our point is that in all of the cases, when the government takes content into consideration, as when it's necessary to define the parameters of a policy, it's not dispositive. As here, there is no First Amendment concern raised at all. And now that could be called content-neutral or it could be called content-based, but permissibly so, it doesn't really matter. The point is that a consideration of content is not necessarily... Counsel, assuming, and I know you don't assume this, but assuming that whether it's content-neutral or not is important to this case, wouldn't it be pretty clear something beyond content-neutral, given that the extent to which content-neutral is necessary? Exclusion as to a specific type of entertainment and nude dancing? Well, Your Honor, our primary submission is that to the extent content is taken into consideration, that's not a First Amendment problem. So I think I agree with you to an extent. I understand that that's your argument, but I just want to focus for a moment on the concept of content-neutral. Because if content-neutral is significant here, this doesn't seem to be content-neutral. To me, it seems to be content-specific. Well, content is taken into consideration to define the parameters of the policy. Content-neutral to the extent that means the government is aiming at some purpose other than suppression of speech, then this would be content-neutral, because there's no aim at suppression of speech here. And while the exclusion refers to adult entertainment cabarets, that puts them... You understand that there probably would be people in this room that disagree with that, that it's not speech-based? Yes. I think the term... So I have a question, a just-in-case question. Assuming that that's true, what is the strict scrutiny would follow, isn't that correct? If a court were to determine that the exclusion or the exemption was content-based, impermissibly, and aimed to suppress expression, that would be a law that would have to undergo a strict scrutiny. But of course, our submission is that... I understand. I'm not disagreeing with that. I'm just asking questions. What would be the compelling state interest if we did travel that path? Your Honor, first I want to note that the issue whether strict scrutiny would be met or not met has never been litigated in this case at all. So if the court were going in that direction, we would ask for a remand. We filed a motion to dismiss and made the same arguments we're making now. Didn't make a backup argument that, well, if the court thinks strict scrutiny applies, here's why we meet it, because we didn't have to. And then the court accepted it. If we got to that point, you'd think we ought to remand it. That's right. You said this is an appeal from a 2615 dismissal. Correct. But I note that a copy of the Poovar's dismissal complaint, dismissed complaint, is not attached to the briefs. The complaint itself is not attached to the briefs. That may well be so, Your Honor. I apologize for that if that's caused inconvenience. I think you argue that the ultimate merits of Poovar's action, rather than focusing on the... the ultimate merits, rather than focus on the narrow issue that's presented under a 2615 motion. How do you respond to that? I'm sorry, I'm not sure I understand. You're leaving the 2615 motion and you're arguing the ultimate merits of the action. Well, our position is that the complaint doesn't state a claim, because Poovar's position is that the adult entertainment cabarets should not be excluded, that it violates the First Amendment to exclude them at all. Aren't we to take all well-plaid facts, reasonable inferences that could be drawn from the complaint itself that's not attached? Well-plaid facts, not conclusions of law or conclusions of fact, but true. And we accept that general principle of law. And our position is that this complaint does not state a claim under the First Amendment. Well, it seems that we are asked to adopt a new and, to me, a diluted First Amendment standard review of tax law that impacts speech. You argue that strict scrutiny is not appropriate here, but I think at various times you assert, throughout your briefs, that rational basis, intermediate scrutiny, or no review at all is appropriate. What is the standard here? Our position is that this case doesn't implicate First Amendment concerns at all, because there is no aim at suppression of speech at all in the ordinance. And therefore, we don't argue for a rational basis, nor do we argue for intermediate scrutiny. And our point is strict scrutiny doesn't apply either. The court must engage in an inquiry whether the city has used this subsidy in some way, rather than encourage one kind of speech, as was done in Rust and Regan and Finley, to, in fact, reduce or limit or restrict a particular kind of speech based on its content, because it disfavors that sort of speech. Is this when your argument of secondary positive effect comes in? I think that's a phrase that the county has used, and related to that, our submission is that the city has a policy of wishing to foster... You don't adopt that phrase? Not necessarily. I mean, I think all it means, I don't have anything against it, I think all it means is... In the county, they have a policy of wanting to foster and encourage these innovative new live performances at small venues, because the idea is, you know, the city wants to be like New York, and these things will spill over, and there will be development around these new theaters, and the city will be known as a place where the fine arts thrive, will have new and innovative productions. Whereas, and so those are sort of the, I guess, positive secondary effects, to call it that, but we don't legislate in order to reduce or, you know, promote any secondary effects. The point, referring to secondary effects, in terms of adult entertainment cabarets, is they are recognized, in all of the case law, as being establishments that offer certain kinds of amusements, that just don't do anything to promote any secondary effects. They don't foster the kind of policy that the city is describing here. Instead, they bring with them negative effects in the community, and that's all we intended by the use of that phrase. Does exemption, can an exemption from a tax break be the source of an attack on speech? I think it could, if it looked like there were so many, you know, exemptions and exclusions that it turned out that only a small group was paying the tax, but I think it's important to point out here that, you know, there's two categories, taxed and not taxed, and what happens here is the adult entertainment cabarets, they're taxed along with pretty much nearly everything else, including speech-related amusements in Chicago. So while it's possible that a system could be set up to reveal and aim at suppression of speech, for example, in Spicer, a case that got cited through the briefs, there was a law that required people to sign an oath that they would not advocate overthrow of the government in order to get an exemption. And it was clear there that the government just didn't want people saying a particular thing. Here, there's nothing like that here. In fact, an erotic performance or nudity or anything like that, that could happen at a small venue. The city doesn't go in and say, no, now you're going to be taxed now that you're showing that particular performance. It just doesn't operate that way. So there's no intent to suppress erotic speech or adult entertainment cabarets who just get taxed along with everybody else. What was the factor that led to the exclusion of Puba here? If it wasn't the erotic dancing, what was it? Well, what leads to exclusion, and it's not just Puba, it's any adult entertainment cabaret, is, as I've mentioned, they've been recognized, those types of establishments, and true, to be sure, based on the kind of amusements they offer, are said to not, rather than foster the kind of policy the city is wishing to foster in advance here, they bring with them the kind of policy that they want. Negative secondary effects to the surrounding community. So, rather than develop new and innovative fine arts performances, rather than provide an exemption to adult entertainment cabarets or any other venue that doesn't foster the city's policy, the city has its parameters and provides the exemption accordingly. Does this come under your position that we should take traditional notice of several findings of facts that have been found to be erotic? In the prior Puba case? You know, again, I think that's a particular argument that the county makes, but as far as, certainly this court can look at any prior decisions, including its own. That's not your position? No, our position is simply, I don't think judicial notice would be necessary, and I think it's well-established in the case law, not just in the prior Puba decision, but other Supreme Court cases, about the sorts of things that we should do. The sort of effects that adult entertainment cabarets bring to a community. So, I don't think it's tied in particular to the last decision, but it's certainly, those kinds of ideas are in that opinion. Now, one other point I wanted to get to is that Puba seems to claim that a subsidy is not the same thing as an exemption. So that if the city administered this program through a subsidy, things would maybe be different. But, of course, that point was squarely rejected in Regan, which holds that for First Amendment free speech purposes, there is no material difference between the two. And I see that my time is expiring. I'd like to proceed to the county. But, you raised certain issues in your PLAs to this Court. You did not raise them, rather, but yet you argued them in your briefs. Regulations were overbroad, vague, and they violated the Uniform Clause of the Illinois Constitution, and I don't think the appellate court addressed those. That's right. I'd be happy to answer that, Your Honor. If you're finished with your question, I'm sorry, I may have jumped in too soon. Puba had a couple of other claims, the overbreath claim, vagueness, and a uniformity clause claim, which they pled in their complaint. In the circuit court, we moved to dismiss and were successful in all the claims. In the appellate court, Puba did raise all of its claims in an attempt to obtain reversal, so we briefed all the claims there. The appellate court reached only the First Amendment claim and concluded that the exemption... It did not address those claims. Are those issues before this Court? I don't think so, Your Honor, and that's because Puba has not raised either of them as an alternative ground to affirm. This ordinance, as we stand here today, will rise and fall based on the First Amendment claim alone, because that is the only claim that Puba presses. It was up to Puba to raise those if it believed they would provide alternative grounds to affirm. Are you addressing them in your brief for this Court? Do you, in fact, raise them? I don't think so. We did raise those because Puba mentioned in its APLA that it planned to address them as alternative grounds. So we wanted to, you know, start litigating those issues because we thought they would be before the Court. But Puba has expressly disavowed any reliance on those claims anymore. So if we go along with your argument, would it be appropriate for this Court to reverse and remand to the appellate court to consider those other issues? Our position is that a remand would not be required or appropriate because those were Puba's claims to raise as alternative grounds. This Court can... It was open to this Court to decide them if they had been raised. They're questions of law. There's no need for a remand. It's de novo review. But they've not been pressed. And so, therefore, we believe they're waived and not before this Court. Thank you, Your Honors. Counsel. Your Honors, good morning. Thank you. May it please the Court. Your time is technically up. But if you want to take just a very few minutes, and I mean just a few. Your Honor, I appreciate that. Ms. Casper has essentially covered the arguments that the City and County have advanced to explain why this tax did not implicate the First Amendment. But I would just like to briefly address a few issues that plaintiffs have raised and some of the questions the Court has... You have probably less than five minutes. Give it your best shot. I can do that. Let me use a little bit of it to ask, where does this term secondary positive effect come from? You know, I put that in the brief, Your Honor. That is not a term of art. Perhaps let me back up. Your Honor, I asked a question about judicial notice. Could the Court take judicial notice of the previous POOBA case and the findings and, in fact, admissions of POOBA that adult entertainment cabarets caused negative secondary effects? That's merely illustrative, Your Honor, to explain why the County, and I suppose the City as well, wished to subsidize activities that not only would not cause those types of negative secondary effects, but rather would promote policies that led to economic growth, a better quality of life, and just a way of promoting the fine arts to make the community a better place to live in and enjoy those benefits. But that is no term of art, Your Honor. I would go back to what Reagan held, what Rust held, what Finley held, and that is that courts, that the government may choose to subsidize certain speech but not others. As we said in our reply brief, the First Amendment is not a poison pill that requires a county to subsidize adult, in this case adult entertainment cabarets, if it chooses to subsidize the fine arts. I would point out that the county amusement tax applies to much conduct that's protected under the First Amendment, to movies, plays. In fact, the small venue exception, the definition of live theatrical performance excludes sports, which could in fact include something like figure skating, ice skating, something that might be considered dance much the way plaintiffs, at least in the trial court, argued that the activities at their establishments do as well. So this tax applies to conduct that's protected across the board. In this case, what the county and city have decided to do is subsidize the fine arts. It doesn't mean they have to subsidize the conduct and the speech at plaintiff's establishment. Now, plaintiffs in their brief argue that a tax exemption is not a tax subsidy. That's simply not correct. The cases they cite, Walls and Camp's Newfound, are not three speech cases. Walls is an establishment clause case, Camp's Newfound is a commerce clause case. The interests regarding the government granting a tax subsidy in those cases is different than what you would have in the three speech clause. The concern with the establishment clause or the commerce clause would be government entanglement. That's not to say that same interest is not implicated in the three speech clause, and it's very clear looking at Reagan and looking at, Reagan even says, acknowledges a tax exemption is not a tax subsidy for all purposes. But the holding of Reagan was that it was, a tax exemption was a tax subsidy for purposes of three speech clause, which is exactly what we have here. Now, Reagan, I would point out, Your Honors, does not apply any sort of standard of First Amendment review. Neither does Rust, and neither does Finley, and nor should this Court in this case. The, this, what I, what the city has argued and what the county has argued is that these ordinances, these tax ordinances, do not implicate the First Amendment and do not require any type of First Amendment review. Now, Your Honors, Chief Justice Fitzgerald, Justice Freeman, we've asked about, you know, whether this was content neutral. I guess our view, Your Honor, is that these tax ordinances are not designed to suppress speech. And in that sense, they are, whatever you want to say, they're content neutral or not impermissibly content based, we think the result is the same either way. They do not, they're not intended to suppress speech, and in that sense, they are distinguishable from plaintiffs, plaintiff refers to a long line of cases upon which it rests its argument, a number of differential tax cases. Well, the county and the city rest their argument on a longstanding line of cases as well. Reagan, the decision of Reagan was based on a 1959 decision of the U.S. Supreme Court in Caminero. Both Caminero and Reagan dealt with the notion of whether or not, Caminero was a case where the IRS refused to uphold a business deduction, and in Reagan, it was just a tax exemption. But the issue there was, did Congress have, if Congress decided to subsidize non-lobbying activities, did the First Amendment require that it also subsidize lobbying? And the court said no. And clearly, lobbying is something that comes within the purview of the First Amendment. So we would ask, we believe, and if I could point out, Reagan and Caminero both distinguished Spicer, one of the differential tax cases that plaintiffs primarily rely on. And in Spicer, the California statute required the taking of a loyalty oath to qualify for a real estate tax exemption. There was a definite attempt in that case to suppress speech by the individual. That's not the case here. That was not the case in Reagan and Rust. And I believe those cases should counsel. Counsel, you'll have to wrap it up. I'll have to wrap it up. Okay. Just two more points? One more minute. Okay. Your Honor, plaintiffs have also argued that the government speech doctrine does not apply here because this is private speech, as our plaintiffs allege. We disagree with that. This is not purely private speech. Like the speech in Finley, these are individuals who are asking essentially for a public financing of their speech. And the position the plaintiffs have taken certainly puts them in that position. And in fact, Your Honor, going back to the notion of order versus content neutral, I would point this Court to the Finley decision. The majority in Finley held that that regulation was content neutral. And in fact, only one of the nine justices, Justice Souter in dissent, found that the congressional statute at issue in Finley was not content neutral and violated the First Amendment. But that, of course, was the dissent. And that is one of the county's primary critiques of the disagreements with the opinion of the appellate court below, that it truly followed Justice Souter's dissent and did not follow the majority position from Finley. Your Honor, I can see my time is up. We'd ask that this Court affirm the decision of the trial court and reverse the decision of the appellate court. Thank you. Counsel, you have a few minutes in the back, just in case you need it. Thank you, Your Honor. David Epstein for Puba. Opposing counsel, co-counsel, Mr. Chief Justice, members of the Court, I would like to start by quoting the city in its brief, which I think intentionally or otherwise capsulized the issue in this case, which I think several of the justices have already identified. The city says at page 14 that it does not dispute, as indeed it cannot, that singling out particular speech to be taxed presents a First Amendment problem. That's a direct quote. That's true. That's what this case is. What the city and county have done in their ordinance as their ordinance was amended in, I believe, 93 or 93, I think it was, is they have created a in taxing amusement, entertainment. That's what they're taxing. That's the subject of the tax. They've created a subclass of entertainment presented in small venues. So they created the subclass, and then what they do is they discriminate, and they create a differential tax based, as I think the Court realizes, on the content of the entertainment. City doesn't like the content. It's taxed. City favors the content, as they said. That's their purpose. That's their motive. They exempt the tax, but they do that within the subclass. Now they say, well, we can do that without implicating the First Amendment, they say, for I think what comes down to now in their reply briefs and their argument to the Court today for three different reasons, all of which are dead wrong. But they are discriminating. They are discriminating by content, and they say they can do it because they have a legitimate government policy of wanting motive, wanting to subsidize fine arts. So the city says, well, as long as we don't have bad motive, which, by the way, we would not concede, but they say because we don't have bad motive, it's okay. Wrong. The issue, as the cases say, particularly in a tax case, is what is the effect? What is the law doing? And what it is doing is selectively taxing disfavored speech and expression. Now, the United States Supreme Court in the City of Erie versus Pabst AM said that although exotic dancing enjoys constitutional protection as expressive conduct, it falls, quote, only within the outer ambit of the First Amendment's protection. But what does that mean? Well, it means that it is not core First Amendment protected speech, as is political speech, as is social dialogue. But it is still protected. And for regulatory purposes, which this Court has addressed in the other PUBA case, there may be different standards. But for regulatory purposes, it may be on the outer ambit of protection. It means it's still in the orbit. It's still protected by the First Amendment. In cases most recently, Playboy, the most recent one, clearly, and that was, I mean, in Pabst AM, I believe we had nudity there, which we don't have here, but real nudity, total nudity. But in Playboy, you had even more extreme sexual content. It was protected. A congressional statute was tossed out on its ear under strict scrutiny, and that was not an issue. So I think we're way past any argument on that basis, which I also point out the city and the county don't even advance in this case. They don't say that they're exempt because of the nature of the speech. Even they don't argue that. But what they do argue is essentially three things. First, they argue, well, because we're not discriminating across the board, oh, we have movies that are allowed. We have, we don't discriminate in large venues, only in small venues. Therefore, it's okay to discriminate in the subclass. That's a silly argument. You can't say, well, we'll discriminate racially or religiously as long as it's not in every county in Illinois, or we'll pass a speech discriminatory law, but we won't make it universal. We'll create some exceptions. A little illicit First Amendment discrimination is still discrimination, and it still violates the Constitution, whether it's in a subclass or whether it's across the board. Mr. Epstein, your motive versus effect argument, how do you address Ms. Casper's position that amusements don't need these subsidies? I believe she said that they don't need government support. They can flourish on their own. I think it's irrelevant. I think it's entirely irrelevant. Doesn't that go to the effect, though? No, not at all. First of all, let me address the subsidy argument seems to, and I think your question addresses that, Justice Thomas. The arguments of the city and county based on Reagan, Rust, Finley, and then the later case of Davenport are dead wrong. They're 180 degrees wrong. It's quite remarkable. Those cases do not hold, not one of them. First of all, none of them hold that a tax is a subsidy. They say a tax, in some respects, is like a subsidy. I'll come back to that. Cases have rejected the argument that you can get around the argument on the subsidy versus tax issue. That's been rejected by the Supreme Court in a number of cases, including the, and they take issue with us, but including in, well, Turner Broadcasting, in the Camp's Newfound case, which they correctly say is a Commerce Clause thing. The reason we cited that is for Commerce Clause purposes, a frankly lower constitutional set of protections, the court rejected the subsidy argument as a defense. I said, no, no, no, you can't do that. There is no case, no case that says that government can make a content-based discrimination in a subsidy, even where it's a real subsidy. Reagan, Rust, Finley, and Davenport. Rust and Finley are appropriation cases. They're grant cases. The government is really subsidizing. It's giving money. Giving money, not taxing. With all due respect, not taxing may be like a subsidy, but it's not the same thing. You can't spend it. You can't say, oh, it's like my wife going in and saying, well, look at the sales going on. I can buy $1,000 worth of clothes for $200. There's 80% sales. Fine. You go buy the clothes for $200. Can you spend the $800? Did the store give you $800? No. No. It's a construct number. So it's not a real subsidy. It's not money. But Rust and Finley were real money cases. And even there, the court said those were facial challenges. It's okay because, very important, it's okay because there is no content-based discrimination. If there were, different story. Same thing in Reagan, which was a tax. Reagan looked at the 501c3 and the 501c4 exemptions from the Federal Income Tax Code. And they said, well, you don't have to give an exception there for lobbying activity. But guess what? Contrary to what the city and county say, it wasn't content-based, nor was Camerlano, which preceded it. The activity was lobbying. Not particular lobbying. Not lobbying for or against particular points of lobbying. Any activity. Here, if they had an exemption for all dancing, it would be a different story. It's not all dancing. It's not all lobbying. It's some. And how is the some defined? You have to look at it. It's content. In fact, what's very interesting, the city and the county ignore the analytical key that the U.S. Supreme Court has handed down, which is a little unusual. It's not, at least it's unusual in the sense that it's not the way we usually as lawyers think about things. The issue is whether the justification for a restriction or something that operates, whatever the intent is, that operates as a restriction on speech or expression, the justification has to be content neutral without reference to content. Well, what's the justification here? The justification here is to promote the fine arts. Well, that's a content-based distinction. And I think the city has now said, and a little bit to discourage what they say is not the fine arts, the semi-naked dancing that we have. That's a content-based distinction. Help me understand this content-based discrimination. Would it violate the First Amendment if the city exempted programs that were directed at children under the age of 10 years in order to encourage more families to participate? Exempt from what? From tax. No, I don't think so. That's not a content, the age is not a content-based criteria. But it's a subclass, isn't it? Sure, but it's, they can discriminate on all kinds of rational bases, but not content of a message, not content of an idea, not content of speech or expression. And the city and the county's analysis is always one step short of that. And your question is a wonderful question, because it points out the distinction. You can discriminate by age. We don't take issue with the small venue, large venue distinction, which, you know, I don't know if it makes sense, but we don't take issue with it. It's not a constitutional problem. What is a constitutional problem is saying, we favor some content, so we won't tax it, and we disfavor other content, so we will tax it. And that's what they're doing here. And it's pernicious, because if they can do this here, you know, what else can they tax? What else can they tax? You know, there's a lot of disfavored speech around. By the way, some of which we might all agree we don't like. Certainly there's some radical speech that some of us may even feel is dangerous. But if you discriminate on the basis of content, you're opening a door that shall never close. And in the 200 and some odd years of this republic, the U.S. Supreme Court has been firm. Differential taxation on the basis of content, you can't do it. You cannot open that door. But you can read the cases again, Your Honor. They don't do, they do not legitimize what the city and county claim they do legitimize. These cases are all content neutral. You go back, go to Davenport. Davenport was the involuntary union contribution to, of nonmembers for the union's political purposes. That was content neutral. It was any political purpose, not certain political purposes. You may have addressed this, Mr. Epstein, and if so, I apologize. But since you're back to this content neutral argument and content based argument, what about Puba One, which involved the same adult entertainment establishment, obviously? Wasn't an ordinance treated there as content neutral, even though it prohibited liquor licensed establishments from presenting certain types of performances? Well, I don't think it was entirely treated as content neutral. What it was treated as was it was treated not as strict scrutiny. It was treated as intermediate scrutiny. That was a regulatory ordinance. And the court's characterization in that case was that the governing distinction in that case was as to liquor regulation. And if you accept, as the court obviously did, accepts that characterization, then the secondary effects analysis follows from that. And if you apply the secondary effects analysis, there's a series of balancings, and you come out one way or the other, as this court did. That's a very different analysis than a differential tax. This has nothing to do with liquor. There is not a separate categorization which might take it out of the content based differential tax analysis here. So because it was liquor there, it was a different analysis. And it wasn't that it was totally, I'm repeating myself obviously, it wasn't that it was totally content neutral, but it was a regulation that fits within the secondary effects analysis, which the Supreme Court has said is an exception where it's applicable. Here, they're not advocating, of course we don't have a regulation here, we have a tax. But we don't have an argument here, nor can we, that this is a secondary effects analysis. The city I think has explicitly abandoned that argument. I hope I've answered your inquiry. I would like to. Because this is a different analysis, how would that affect taking judicial notice of several findings of facts in the 206 program? Or would it have? Well, I think the court could. I'm not sure there really were findings of fact in that case. But if there were, I don't see how they're pertinent here. I guess the answer is if you're taking judicial notice, I think the answer is yes. I think the question is, is there anything there that would be pertinent here? I think the answer is no. And a 2615 motion, that's how this comes here. Yes. It comes here on the allegations of the complaint here, which, by the way, do not go into the city's motive. I mean, we do not, I suppose if we lose here, that would be the next step for us if we went back, would be to allege that the city does have an improper motive. Which, while it's not necessary to make it unconstitutional, an improper speech suppressive motive would alone make it suppressive. But that's not before the court here now. Before I forget to do so, I'm sure the court will have more questions, I do want to quickly address the procedures. It is our position that should the court reverse, and of course we think the appellate court got it exactly right and this court should affirm, but should this court reverse, and I think Justice Freeman's question before and Chief's question before, the only issue here is the First Amendment question, and I suppose the tag-along Illinois Free Speech Clause argument, which is a tag-along based on the decisions of this court. And that's the only issue here because that's the only issue that the city raised. The city and the county are the appellants here. We won, everybody forgets, we won in the appellate court, but we lost in the trial court. So the question for us was do we raise these other issues and sort of dilute the attention of the court in this appeal when the city didn't appeal on the other state issues, and we decided no, we shouldn't do that, in part because we would be asking this court to address those questions for the first time on review when really the appellate court has not addressed them. But it presented an interesting dilemma because we could have raised those issues, but we would not be raising had we raised them. We would not be raising them in defense of the trial court's decision. We would have been raising them in defense of the appellate court's decision, even though they never addressed them. And after we thought about it, we said that's a little unseemly and we don't think that that is good procedure. I would only advise the court that we really didn't find either in the court's rules or in the precedent's any clear direction on how to proceed. We thought that was the best way to proceed. So in the event that this court were to reverse, we would ask that you remand to the appellate court for their determination of the other issues before it would ever go back to the trial court for a restart. The only other thing I would address on the merits of the case, and I can do this very quickly, is the government speech doctrine, which only the county has advanced. The city abandoned that argument in the appellate court. And I would just say that I think it's very clear here that there is no government speech in here. It's private speech. The later cases, interestingly, they cite the Seventh Circuit case, the Choice Life case versus Jesse White, which was the license plate case, which I think is a perfect analogy. There you have license plates. Government was actually publishing the license plate, distributing it, presenting it to the people. The government paid for the making of the license plate. They charged a fee for it, but they said, and the court said, well, wait a minute, whose speech is it? And, of course, it wasn't the government's message. It was the vanity car owner's speech. So they said, well, it's not exempt from the First Amendment. It's not government speech. We don't have any government speech here. The county's argument is that, well, if we tax, there's a message there, so it's government speech. If we regulate, there's a message there, so that's government speech. And certainly if we subsidize, if we spend money, that's a message, so that's government speech. Now, I think we'd all agree, when we make war, there's a message there to the enemy, so that's government speech. So what do we have? We have taxing, spending, regulating, and the national defense. That's pretty much all the government does. So the government speech argument, as the county would expand it, would say, anytime the government passes a law, that's government speech. It's exempt from the First Amendment. Guess what? You've just repealed the First Amendment because you've now said everything's exempt. And, of course, let's remember, the First Amendment only applies to government action. So the government speech argument, as it's made in this case, it seems to me is a nonstarter. And I think that that covers the ground. We come back to the fact that this is maybe like a subsidy. It's not a subsidy. Even if it were a subsidy, you can't discriminate on content. So we're left where we started. The city's original, my quote from the city's brief, if it's a tax on selected speech, it raises problems. This one raises problems. It's invalid. The court should affirm. If there's no other questions, I will call it a day and head to Washington. Thank you. Just a couple of quick points, Your Honors. Opposing counsel discussed this motive versus effect and even alluded to the city maybe having a bad motive. The case law makes clear that when there is an intent to suppress, that's what the court is looking for. And that doesn't have to be an express motive stated. It could be the way the law is set up. But neither is true here. Adult entertainment. Neither is before us, is it? Neither is before us. Well, the question whether the city's ordinance reveals an aim to suppress speech is before the court. And it does not. As I've mentioned, adult entertainment cabarets are taxed along with all other amusements. They are not singled out to bear the burden of the tax. As the cases that Puba relies on reveal, such as Arkansas Writers and Minneapolis Star, even erotic content is not targeted. If a small venue that does fit the exemption is showing a performance with erotic content or nudity, it would still receive the exemption. So there's not any indication whatsoever, like in Spicer, that there would be the government saying we don't want people, we disfavor erotic content. The city doesn't wish for anybody to speak of it. And so we've taken these steps to try and reduce it in the marketplace of ideas. There's just no indication of that here at all. Council also attributed, I think to me, the statement that there is an attempt to discourage. This is more of the same point. The case law is clear that encouraging one kind of speech through a subsidy in a program the way the city's is designed doesn't intend to discourage or suppress another kind of speech. Also, I want to briefly address Council's point that there is no case that stands for the proposition that a content-based subsidy can be made, and that Regan doesn't stand for that proposition either. Now, we explain in our briefs why that construction of Regan isn't accurate. But importantly, in Davenport, the court said, and if the court could just bear with me, it's worth reading, it is well established that the government can make content-based distinctions when it subsidizes speech, citing Regan. So it's not our imagination, but that's the way Regan is being interpreted. And we provide explanations in our brief of why Davenport's reading of Regan makes sense. Council also mentioned that it was up to the city to raise Puba's other claims for it. We're not aware of any doctrine that would require the defendant to raise the plaintiff's other claims in the PLA. In fact, this court's case in Kaveny holds that it doesn't have to. Those are alternative grounds. They're questions of law. They're open for the court to decide. Finally, on the point about government speech, we explain in our reply brief that the doctrines involved with those principles, we did rely on those. We've relied on those all along. But importantly, we think that the appellate court and Puba narrowly construe that doctrine. When the government speaks or when it tries to encourage private speakers to convey its message or when it legislates to advance a particular policy of its own by creating a subsidy, the government speaks. And all of the same doctrines apply, whether it's called government speech or whether it's advocating a particular policy or program like in Rust or in Regan or in Finley, where the government defined a policy, but there were private speakers speaking in Finley. The artists themselves were speaking. And here, subsidizing private speech will promote the city's policy of enhancing Chicago's fine arts culture. You can call that a message, too, that the fine arts thrive in Chicago. All of it sort of comes down to the same basic principles. And for all these reasons, Your Honors, we ask that the judgment of the appellate court be reversed. Thank you. Your Honors. I'm sorry. Did the light go on? Two minutes? You could have until the light goes on. Thank you, Your Honor. The red light, not the yellow. Okay. Just four brief points. Distinguishing on the basis of conduct is not the same as discriminating on the basis of conduct. What plaintiffs have called discrimination is really the type of distinguishing that the Congress did in Regan and the U.S. Supreme Court upheld. If plaintiff is right, then Regan comes out the other way. But it did not. If local government or any government wants to subsidize one activity, one type of speech, it is not compelled to subsidize other types of speech as well. And it doesn't matter that plaintiffs argue that a subsidy is different because real money is involved. Well, that's not. The Regan case was a tax exemption. So that point is clearly not right. And as for Regan and Caminero, in those cases, in the statutes at issue, Congress chose elected to not subsidize lobbying. Lobbying is a form of speech, clearly protected by the First Amendment, which protects the right of individuals to petition the government for redress of grievances. Now, if Congress did not have to subsidize that, if it elected to subsidize non-lobbying activities, that principle compels reversal of the appellate court holding here. The last point I'd make, Your Honor, as to the other arguments below, based on uniformity clause, free speech clause, and the overbreadth and vagueness arguments, those are arguments that neither defendant had any obligation to raise. If anyone, it was plaintiff who would have raised those arguments as an alternative basis for affirmance of the appellate court's opinion. They did not do so. They have weighed those arguments. So for those reasons, Your Honor, and those that are brief, we'd ask the Court again to affirm the decision of the trial court and reverse the decision of the appellate court. Thank you. Thank you, counsel. Cases number 105-971 and 105-984 are consolidated.